IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DAVID M. COOK,**

        **Plaintiff,**

                                                                                         Case No. 2:14-cv-1563

    **v.**                                                                 **JUDGE GEORGE C. SMITH**
                                                                        **Magistrate Judge Kemp**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## OPINION AND ORDER

### I.    INTRODUCTION

Plaintiff, David M. Cook, filed this action seeking review of a decision of the Commissioner of Social Security denying his applications for social security disability benefits and for supplemental security income. Those applications were filed on April 30, 2011, and alleged that Plaintiff became disabled on June 25, 2007.

After initial administrative denials of his claim, Plaintiff was given a hearing before an Administrative Law Judge on February 13, 2013. In a decision dated March 21, 2013, the ALJ denied benefits. That became the Commissioner's final decision on July 11, 2014, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on November 25, 2014. Plaintiff filed a document which the Court has construed as a statement of specific errors on May 20, 2015, to which the Commissioner responded on August 3, 2015. Plaintiff did not file a reply brief, and the case is now ready to decide.

## II. THE LAY TESTIMONY AT THE ADMINISTRATIVE HEARING

Plaintiff, who was 45 years old at the time of the administrative hearings and who has a bachelor's degree in computer information systems, testified as follows. His testimony appears at pages 64-73 of the administrative record.

Plaintiff testified that he worked in the computer field until 2006. His last job was essentially sedentary. He stopped working due to chronic headaches and neck pain. He was unable to stay awake or concentrate for more than five hours. He took medication to help with his headaches, but injections had not helped his neck pain. Physical activity or emotional stress both made the pain worse.

Plaintiff was taking methadone for pain. It caused side effects including dry mouth and fatigue. He slept twelve to eighteen hours per day. On bad days, which occurred several times a week, his headache was so severe that he could not engage in any activity. He also experienced symptoms of posttraumatic stress disorder, and had a hard time being around people without experiencing a panic attack. However, he had never sought psychological treatment.

## III. THE MEDICAL RECORDS

The medical records in this case are found beginning on page 238 of the administrative record. The key records can be summarized as follows. Because not all of the records relate to the issues which Plaintiff has raised, the Court will not include, in its summary, records which are not pertinent to the questions presented for decision.

As early as 2001, Plaintiff was reporting daily severe headaches. His treating doctor, Dr. Wallace, referred him in 2002 to a specialist for evaluation. The impression at that time was fibromyalgia syndrome and myofascial headaches. In 2007, he was referred to a pain

management specialist for his chronic neck pain. He demonstrated a classic C2 headache pattern. Medication and surgical options were discussed at that time. A second referral was made, also in 2007. Plaintiff demonstrated tenderness over the cervical spine, and an MRI from 2003 (which can be found at Tr. 266-67) was reviewed which showed multilevel degenerative disc disease with bulges at C3-4, C4-5, and C5-6. Some spinal stenosis was also present as well as spondylosis. Plaintiff was described as somewhat defiant and only willing to take narcotic pain medications. The examining physician, Dr. Martin, thought Plaintiff might benefit from epidural steroid injections, and also from a workup for sleep apnea. Dr. Martin would not prescribe opiod pain medications and thought Plaintiff should be weaned off his current medications and also stop smoking and using alcohol while on pain medications. Finally, Dr. Martin suggested referral to a different pain specialist for further treatment. (Tr. 238-49).

Plaintiff did see Dr. Weiss, an orthopedic specialist, in 2008. Dr. Weiss's findings were much the same as the other specialists' but he did note that Plaintiff appeared to be depressed. (Tr. 296-97). He saw a different specialist, Dr. Taylor, in 2009. Plaintiff reported anxiety and depression as precipitating factors for headaches. An MRI from 2008 was reported as showing no changes from 2003. Plaintiff showed a decreased range of motion with pain in the cervical spine. Some element of myofascial dysfunction was noted. A number of therapies were recommended. (Tr. 298-302).

There are a number of office notes from Dr. Wallace in the record. They generally show diagnoses of chronic myofascial pain syndrome, degenerative disc disease, fibromyalgia, and chronic anxiety disorder. Plaintiff's treatment history included multiple medications and injections, but in 2009 he was primarily taking hydrocodone and Valium. Oxycontin was

prescribed in 2010 and Plaintiff reported relief with that medication, although by 2011 he was asking for different medication - specifically Methadone.

      Dr. Ayesu-Offei performed a consultative physical examination on September 21, 2011. Plaintiff reported a history of neck pain and headaches. He also told Dr. Ayesu-Offei that he could perform activities of daily living independently, could climb stairs, could lift up to 30 pounds, could walk a quarter of a mile, could sit for two hours at a time, and could stand 30 minutes at a time. He did report anxiety. He was able to drive. After examining Plaintiff, Dr. Ayesu-Offei concluded that he could do "light physical activity." (Tr. 324-26).

      Only one psychological examination appears in the record, and that is a consultative examination done by Dr. Meyer, a psychologist. She performed a clinical interview during which Plaintiff said that he had both physical complaints and generalized and social anxiety. He described feelings of impending doom and panic attacks (which occurred very infrequently). He did not socialize due to his anxiety. Dr. Meyer described Plaintiff's affect and mood as within the normal range but noted that he complained of poor concentration and memory. She rated his GAF at 55, diagnosed social phobia, panic disorder, and generalized anxiety disorder, and thought Plaintiff could adequately recall and follow instructions, could maintain basic concentration and attention, and would demonstrate symptoms of anxiety if forced to relate to multiple people at once or for more than a short period of time. She thought he was limited to low-stress work. (Tr. 332-45).

      Dr. Wallace wrote a letter on November 11, 2012, noting that he had been treating Plaintiff since December, 2000. He said that Plaintiff was severely limited due to pain and also suffered from PTSD. He expressed the opinion that Plaintiff was totally and completely

disabled.  Dr. Wallace also filled out a physical capacity evaluation form on which he indicated that Plaintiff could stand, walk, and sit for only 1-2 hours each in a work day, could lift up to ten pounds, could not use his hands for fine manipulation, and could not bend, squat, crawl, climb ladders, or reach above shoulder level.  He also said that Plaintiff's condition would deteriorate under stress and that he would have five or more days per month where he would have unscheduled absences from work.  Dr. Wallace expressed opinions about Plaintiff's mental functioning on another form, noting a number of marked limitations in the area of social functioning and in carrying out tasks.  (Tr. 415-420).

Finally, the record contains some opinions expressed by state agency physicians or psychologists.  Dr. Bergsten, a psychologist, concluded that Plaintiff had a severe anxiety disorder, while Dr. Lewis found severe physical impairments but also stated that Plaintiff could work at the medium exertional level.  Dr. Bergsten evaluated the impact of Plaintiff's anxiety disorder, determining that it posed limitations in the areas of dealing with work stress, including changes in the work setting, and in interacting with others.  Dr. Hill, another psychologist, reviewed these findings and agreed with them, while Dr. Mckee - who, like Dr. Lewis, did not have the benefit of Dr. Wallace's opinions - concurred with Dr. Lewis's assessment of Plaintiff's physical capacity.  (Tr. 86-127).

### IV.   THE MEDICAL TESTIMONY

Dr. Ronald Kendrick, a board-certified orthopedic surgeon, testified as a medical expert at the administrative hearing.  His testimony begins on page 73 of the administrative record.

Dr. Kendrick identified Plaintiff's primary physical impairment as degenerative disc disease in the cervical area without significant stenosis.  Dr. Kendrick would have limited

Plaintiff to sedentary work due to neck pain, with walking limited to thirty minutes at a time and sitting limited to one hour at a time.  He also said that the amount of time Plaintiff slept could be the result of his medication, his pain, or depression.  He thought Plaintiff could occasionally bend, crawl, and crouch.

In response to a question from Plaintiff's counsel, Dr. Kendrick said that it was "possible" that Plaintiff would have full or partial day absences from work.  Dr. Kendrick also had no basis upon which to disagree with Dr. Wallace's view that such absences could occur five times per month, or Dr. Wallace's conclusion that Plaintiff could not sustain a full 40-hour work week.

## V.    THE VOCATIONAL TESTIMONY

Dr. Bruce Walsh was the vocational expert in this case.  His testimony begins at page 77 of the administrative record.

Dr. Walsh first testified that Plaintiff's past relevant work as a procedures analyst was sedentary and skilled.  His job as an equipment installer was medium and skilled, but Plaintiff performed that job at the heavy exertional level.

If Plaintiff were limited to sedentary work as described by Dr. Kendrick, he could still do the procedures analyst job.  Dr. Walsh also identified other jobs that someone with those limitations could do, including office clerk and charge account clerk.  Both are unskilled positions.  Such a person could also do some semi-skilled data entry jobs.  According to Dr. Walsh, for someone to do any of those jobs, the person would have to be able to  complete an eight-hour work day and could not have five unscheduled absences per month.  Moreover, someone who could not sit, stand, and walk for a combined eight hours in a day could not be

employed, nor could a person with a combination of moderate and marked mental limitations which prevented him from maintaining attention and concentration for more than brief periods of time.

## VI. THE ADMINISTRATIVE LAW JUDGE'S DECISION

The Administrative Law Judge's decision appears at pages 16-27 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act until December 31, 2011. Next, he found that Plaintiff had not engaged in substantial gainful activity since his onset date of June 25, 2007. Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had a single severe impairment: degenerative disc disease of the cervical spine at C3-C6 without significant stenosis. The ALJ also found that this impairment did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the sedentary exertional level, could stand or walk for 30 minutes at a time and up to six hours a day, could sit for one hour at a time and up to six hours a day, and could occasionally bend, crouch, and crawl.

The ALJ next concluded that Plaintiff, even with these limitations, could do his past work as a procedures analyst. He could also do the other unskilled sedentary jobs identified by Dr. Walsh. Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

## VII.     PLAINTIFF'S STATEMENT OF SPECIFIC ERRORS

Plaintiff filed a document entitled "Complaint" which appears to be his response to an order directing that he file a statement of errors.  Liberally construed, the complaint asserts that the ALJ did not give sufficient weight to the opinion of his treating physician, Dr. Wallace, and that he improperly considered the opinions of other doctors who saw Plaintiff only once.  He also asserts that the ALJ did not properly evaluate his mental limitations or his excessive sleeping.  These claims are evaluated under the following standard.

### A.     Standard of Review

Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the

Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### B.     The Treating Source Opinion

The ALJ had this to say when rejecting Dr. Wallace's opinion. First, he found that Dr. Wallace was "not qualified" to form opinions on Plaintiff's residual functional capacity because he "maintains a general practice only and is not a specialist." (Tr. 24). Second, he noted that Dr. Ayesu-Offei offered a different conclusion. Third, he found nothing in the record to support Dr. Wallace's opinion about how many days Plaintiff might miss due to unscheduled absences from work. The ALJ viewed Plaintiff's failure to mention this to Dr. Ayesu-Offei, and his statement that he could lift thirty pounds and walk a quarter of mile, as inconsistent with this limitation. Finally, the ALJ rejected Dr. Wallace's (and Dr. Meyer's) opinions of psychological limitations by noting that Plaintiff had never received psychological treatment. The ALJ also claims to have relied on the state agency physicians' views as to Plaintiff's physical limitations, even though those views conflict dramatically with the ALJ's actual residual functional capacity finding.

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. 20 C.F.R. §404.1527(c); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion. Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990). The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating

-9-

medical sources, and may consider the claimant's activities of daily living.  Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994).  No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision.  Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

      The Commissioner defends the ALJ's treatment of Dr. Wallace's opinion by arguing, first, that the ALJ was permitted to discount Dr. Wallace's views to some extent because Dr. Wallace was a general practitioner and not a specialist.  However, that is not what the ALJ actually did.  He found that Dr. Wallace was not qualified to express an opinion as to Plaintiff's physical capacity.  As a matter of law, that is incorrect.  The Commissioner does not attempt to defend the ALJ's rejection of Dr. Wallace's opinions based on the conflicting opinion of Dr. Ayesu-Offei, and with good reason; the mere presence of a conflict between the opinion of a treating source and the opinion of a non-treating consultative examiner is not a sufficient reason to reject the treating source opinion.  See Melendez v. Comm'r of Social Security, 2014 2921938, *7 (N.D. Ohio June 27, 2014)("an ALJ cannot base his or her rejection of a treating physician's opinion upon its inconsistency with the opinions of non-treating physicians").  Finally, the Commissioner concedes that the ALJ never made an explicit finding that Dr. Wallace's opinions were supported by his findings or inconsistent with the objective medical evidence of record, which is the first question an ALJ is required to consider before determining how much weight to give to a treating source opinion.  See Gayheart v. Comm'r of Social Security,, 710 F.3d 365, 376-77 (6th Cir. 2012); see also Olson v. Comm'r of Social Security, 2015 WL 136219, *9 (S.D. Ohio Jan. 9, 2015)("Social Security regulations provide that the ALJ

must first determine whether to give controlling weight to a treating source's opinion by assessing its supportability and consistency with other substantial record evidence"). This failure in methodology is not just a technical matter; under Wilson, supra, a claimant and the reviewing court are entitled to know the basis of the ALJ's decision about treating source opinions, and the failure to follow this analytical step makes it difficult, if not impossible, for the Court to discern the ALJ's reasoning process. And, of course, the Commissioner's effort to supply the reasoning absent from the ALJ's decision does not suffice. See Evans v. Commissioner of Social Security, 2015 WL 4592449, *5 (S.D. Ohio July 29, 2015), adopted and affirmed 2015 WL 4934192 (S.D. Ohio Aug. 18, 2015). For these reasons, the Court finds that the ALJ did not cite to appropriately-supported reasons for rejecting Dr. Wallace's opinions as to Plaintiff's physical capacity, nor did he articulate adequately the reasons for not giving it controlling weight. This error requires remand.

**C.     Psychological Impairment**

Fairly read, Plaintiff's filing also raises an issue about the ALJ's decision that no severe psychological impairment exists in this case. See Doc. 19, at 4 ("The ALJ seems to believe my Anxiety disorders as well as my PTSD are not serious because I haven't seen a psychiatrist"). The Commissioner does not address this issue directly, asserting generally that Plaintiff is merely attacking the way in which the ALJ weighed the evidence, and stating, without giving reasons, that the ALJ properly determined that any mental impairments suggested by the record were not severe. The Court finds error in this part of the ALJ's decision as well.

As described above, there were several opinions given - both by Dr. Wallace, who is not a mental health professional, and by both Dr. Meyer and the two state agency psychologists - that Plaintiff suffered from a severe mental impairment which caused some restrictions on his

ability to perform the mental requirements of work activity.  There were no conflicting opinions.  The ALJ dismissed all of this evidence by noting that "the undersigned has also considered the opinion of Dr. Meyer ... but overall given the claimant's lack of treatment at any point ... finds that limitations as a result of mental impairments are not supported."  (Tr. 25).  The ALJ then mentioned the state agency psychologists but did not acknowledge that they, too, found a severe mental impairment, nor did he explain why he chose to disregard their opinions, apart from referring to his previous explanation about why he gave Dr. Meyer's opinion no weight.

      The Court finds that a reasonable person could not, on this record, completely disregard the opinions of three mental health professionals on the sole ground that Plaintiff had not sought psychiatric treatment for mental impairments.  Plaintiff's anxiety and PTSD are mentioned in the treatment records, and he was receiving medication from Dr. Wallace for anxiety.  Under these circumstances, the ALJ's finding of no severe mental impairment is not supported by substantial evidence.  This error is not harmless because the ALJ did not include any psychological limitations in his residual functional capacity finding.  See Mays v. Commissioner of Social Security, 2015 WL 4755203 (S.D. Ohio Aug. 11, 2015), adopted and affirmed 2015 WL 5162479 (S.D. Ohio Sept. 3, 2015).  Remand is required on this issue as well.

## VIII.  DECISION

Based on the above discussion, Plaintiff's statement of errors (Doc. 19) is **SUSTAINED** and the case is **REMANDED** to the Commissioner of Social Security for further proceedings consistent with this Opinion and pursuant to 42 U.S.C. §405(g), sentence four.


                                            */s/ George C. Smith*
                                            **GEORGE C. SMITH, JUDGE**
                                            **UNITED STATES DISTRICT COURT**